Good morning. May it please the Court, my name is David Levin. I represent the appellant Spensky, and if the Court would permit, I would like to reserve five minutes for rebuttal. Okay. Mr. Spensky, let me ask you, sometimes I go through these things and it's a complicated case and sometimes in the middle of trying to resolve the complexity, I start scratching my head and say, I'm missing something big here. Tell me what I'm missing here. Had you given them the unredacted statements that they asked for, this thing would have gone, at least the issue that is before us, would have gone away. They would have had some basis upon which to make a determination, assuming the March 6th letter did not constitute the withdrawal liability. Why not just give them the documents which they said they need to determine the withdrawal liability, number one. And number two, the lawsuit is filed, the request for arbitration is January 25 of 2007. The lawsuit is filed a year and a half later. Meanwhile, I assume something's going on in the arbitration proceedings, but there's no argument for waiver. But why isn't it waived? Why isn't the issue waived by initiating arbitration that far in advance of filing a lawsuit? I know why you said you filed for arbitration, I understand that, but you could have done that at the same time. If you will, Your Honor, the two questions in the order that you presented them. In fact, the Penske is not a publicly traded company, so that the information that was requested is not something that's readily available to the public. And as the record reflects, there was an exchange about the signing of a confidentiality agreement. Because the agreement actually, that's to say the sales agreement, was actually provided. Determinations were made earlier about, with respect to the sale, that the sale really did occur. It wasn't something imaginary. There are, within the record, there are actually claims by the plan against the purchaser, so that this sale really did go forward. But in order to provide all of the detail without any redaction, we wanted a confidentiality agreement. And once the It took two years to do that? Two years to get a confidentiality agreement signed? No, it didn't take two years to get a... It took a long time. Pardon me? Didn't it take a long time? It didn't take two years to get a confidentiality agreement. If you will, it appears from the record, anyway, that the ball was dropped by both sides with respect to pursuing the information that was requested. But when there was, if you will, a hot request, you provide this information to me, there actually was a response with respect to a confidentiality agreement, which eventually was signed. And right after it was signed, all of the information that was requested was provided. That's with respect to the first question that you asked, why not provide it? As to the second question about the timing, we have a statute, the Employee Retirement Income Security Act and the Multi-Employer Pension Plan Amendments Act, which deals with, if you will, very draconian impact of a failure to follow a process, even if you as the employer don't think that the process is appropriate or that it's inconsistent with the statute. If you don't follow the process, but you become... You're challenged and the cases are legion. If you don't timely request the arbitration, if you don't timely make the fees... Oh, I understand all that, but you could have requested the arbitration in trial of suit. Why did it take so long? And I actually can tell you from my own experience, because this was and is my case. We really believe that there had been another determination made. You believe what, sir? I didn't understand that comment. I'm sorry, can you... You believe what, sir? There had been... We really believed that there had been another determination. That's to say... Another determination? Yes. You mean the October 2006? That's right. The only determination found by the lower court was the March 6 letter that says, we've determined that there was a withdrawal December the 31st, 2002, that you're liable and here's your schedule of payments. But we really came to the conclusion during the process proceed because there wasn't any December the 31st, 2002, withdrawal. This is something that isn't in dispute. That was an event that didn't occur. And in order to pursue this, I've been, if you will, I've been dealing with this statute since before it was enacted when I was with the government when it was being drafted. I didn't work on the drafting, but it was there. But I followed... Maybe he didn't help. That's right. This one I'm not to blame for the drafting side. But in 30 years of dealing with this particular part of the statute, I've never seen anybody pursue a non-determination. Because the way the statute works is, first it says as soon as practically after a withdrawal by an employer, then the trustees have to give a notice. The notice requires a determination that there was a withdrawal because that then tells you who the employer is. It also tells you how to calculate the liability. So as we were pursuing this, we were really convinced that there had to have been a determination about I was wrong, that there actually was a December 31st, 2004 withdrawal and the basis for the determination that Penske was liable. When we did discovery during the arbitration process, what I came to the conclusion after looking at the documents that we got was actually what the judge found in this case. There wasn't any other determination. No, no, no, no. Wait a minute. The judge never mentioned the October 2nd, 2006. Never mentioned it in his opinion. That's correct, Your Honor. And yet the issues that we're dealing with here are very heavily dependent upon what effect we accord or someone accords to the October 2nd determination or amendment or whatever you want to call it. If you will, Your Honor, I don't think so. And the reason I say it is that the court below did not find that there were two determinations. The court below found that there was only one determination. That determination was that there was a withdrawal that occurred on December 31st, 2002. The court below did not find that there was a second determination. It only found the one. You said in your brief the court apparently did not even consider the October 2nd, 2006 letter. Because the court doesn't even mention it. Didn't it have to? Didn't it? Shouldn't it? Because then your date would change from 2002 to 2004, wouldn't it? Well, it doesn't. It's not just the date, Your Honor. I know. That's what I'm asking you. Yeah. So what we end up with, if you will, Your Honor, is a determination by a district court that, excuse me, a ruling. I don't want to confuse that. A ruling by a district court that a determination that was made with respect to a withdrawal that we, on December 31st, 2002, and all that flows from that was enough to invoke the review and arbitration process. And what we stand here and say to you is we found no case, and the trustee, I believe, has found no case to present to this court in which there was a non-determination that then proceeded to be arbitrated. That's what we have. What we have is if you were to leave this case, this decision, unreversed, what you really have is that where trustees make a determination that they conclude is wrong, that we have to go through an arbitration process, and the reason that that's so difficult, if you will, is that everything's key to that determination, who the employer is, how much the liability is, not only that, the payments that Penske has to make, the quid pro quo for making payments under this statute is that the procedure's followed, and the procedure's actually in the statute. It says as soon as reasonable and practical after the employer withdraws. They made a determination that the employer withdrew in 2002 and issued the notice. They concluded that that wasn't when it happened. What the statute really calls for is for them to make a new determination, and that new determination would require them to decide when the withdrawal was, who the liable employer was. There's no dispute that there was an error made in the March letter. There's no dispute on the date of withdrawal. It's not an error, Your Honor. What they conclude, if you will, what they conclude is there was no withdrawal. I'm trying to throw one over the punch. It's true that it was erroneous. It's clearly erroneous. It was not even disputed. It's not even disputed. Why didn't you go back to the district judge and say, hey, wait a minute. We have this letter of October 6th, which we submitted to you, Your Honor, but you apparently didn't consider it. He didn't consider it. And that changes or could change the whole landscape. It could make the whole thing go away. We didn't ask for a reconsideration. It was a determination that we wouldn't, that we would not go and ask the judge to reconsider because the judge had all of this presented to him, if you will, incredibly straightforward in a case in a situation where the judge was ordering us to do something to deal with a withdrawal that didn't occur. Let me ask you something. Do you want us to remand the case? What do you think should happen now at this point in the whole situation? If you will. Thank you. What do you want us to order? What I'd like you to do is to reverse the decision that that was a determination that is clearly erroneous, proceeds to arbitration. I'd like you to reverse that so that we don't have a ruling like that, not just for this case because I deal with this, but that you would reverse that and that you would compel the appellees to refund the money to Penske. It would be then for the trustees to decide whether they could make a new determination about that. But didn't the liability that they assessed in the October 2 letter that was based upon, even though that wasn't part of the district court's ruling, the amount that they assessed you arose from the subsequent date, not the earlier date. Why would you get a refund? If you will, not necessarily. In order to actually make an assessment, the trustees have to make a determination of when the withdrawal occurred and who the employer was. That decision is one that would then be subject to review. But there's been no determination in this case that a withdrawal occurred on December 31, 2004, for which Penske is liable. Because there's been no determination made about the effect of the March sale. That's right. That's true. That's absolutely correct. That's why. Because initially you did not present the documents they were looking for, the schedules, the exhibits, the addenda. But then because they decided in October they didn't have the information and they couldn't make that determination. So we know the date of withdrawal, but we just don't know the status of the leaseway control, whatever it is. We don't know who the employer is. We don't know what happened in March. That hasn't been decided. That's right. We don't know who the employer is because no determination has been made, if you will. The statute, once trustees do make the determination, then the law is clear that the employer has to say, no, you're wrong. I'm not part of that employer, I'm not liable, and here's why. But they have to make the initial determination, but they didn't. We have no determination of who the employer was with respect to withdrawal. Right. You placed, and I understand why you had to file for arbitration, I understand the time requirements, et cetera, but you placed squarely before the arbitrator the issue of whether Penske was part of the leaseway control group on December 31st. That's an issue before the arbitrator now, and the arbitration has been pending for three years now. You're fighting very hard to avoid arbitration. Why? Actually. Why don't we just let this go forward? Well, because what we have is the arbitration of a nondetermination. The whole process, if you will, the whole process under the statute is one that's very much loaded against the employer, and the quid pro quo is the process that's gone through. And what you end up with is arbitration is a review of determinations. It's not a de novo review. We don't have those determinations. You're arguing basically there's no jurisdiction on the part of the employer because the chugging event doesn't occur, but why not make that argument to the arbitrator? Which is what we presented to the district court. Which is why I say you're asking us to decide an issue that the district court hasn't considered, and we're a reviewing court. Well, what the district court concluded, if you will, is that the determination that was made by the trustees, which everybody agrees was wrong, was sufficient to invoke the process. But the way we presented it when we first went to court was the arbitrator has no ability to decide what his own jurisdiction or her own jurisdiction, say his, his jurisdiction is because that issue, what 4221 means is not subject to arbitration. That's the way we presented our complaint. We said we can't go forward with this, and the court said, if you will, the court said, oh, no, the determination that was made, by the way, it was erroneous, is enough to invoke the process. Well, then why shouldn't we just be the district court and ask the district court to consider the effect of the, the March sale pursuant to that October letter? Well, the, because the court, the court has already ruled that there was only one determination. If you'll note, that was hard and coming, and it wasn't in the motion to dismiss or the court's opinion on the motion to dismiss, and the court even says. Well, that was apparently the only determination the court had before it, that he thought he had before. So, so he's not going to find there were three when he only has one before, or two, you know. If you will, if the court were to remand and say, what the, if you will, if the formulated, I, I submit to you, you asked me, I said, I, with all due respect, I said, I thought reversal was appropriate, but if you were to remand, I think the instruction on remand really is whether or not, if the trustees make a new determination of withdrawal and withdrawal liability, do they have to issue a new notice under 4219? I think the question, the statement of the question is actually its own answer. But there was a determination of liability there. The determination of liability was never withdrawn by the trustees, right? That's correct. Okay. The determination of liability was based on an erroneous set, an erroneous understanding of the dates, the applicable dates, right? That's correct. When the statute said, but even though it was wrong, it's there. Now, when does the statute say, doesn't the statute say if there's a determination of liability, then you have to make the payments, which of course later can be reviewed, the interim payments. So isn't that enough in itself? And then it's got to shake out in the later proceedings? If you will, no. I mean, isn't it, you know, like a really clear little thing, and then you try to win in the arbitration saying there was no liability because the sale, you know, was, was okay and we were out of the picture. If you will, if you, first of all, no. When the determination is made that a withdrawal didn't occur, then the statute says when you determine that a withdrawal does occur, then you go to. But they did determine. Actually, they determined that a withdrawal occurred that didn't occur. I know they were wrong. That's right. Okay. But the question that you asked, Your Honor, about the notion. But they didn't then withdraw their assessment on that as they might have. So you're saying, well, how can they, how can they take such an unconscionable position? I've been looking at unconscionable positions my whole life. Actually, it's taken of you. I mean, it does seem a little. Nevertheless, as you say, this statute is really, is really rigged against the employers. If you apply your reasoning, if you will, Your Honor, to the law as it stands, what we would end up with, because if the law didn't exist and we just had an arbitration agreement, perhaps what you say would be applicable. But in this particular instance, the arbitrator has to review determinations. If there's been no determination made. But, you know, that's circular. There has been a determination. You're arguing it's wrong. They're not necessarily disagreeing that it's wrong. It seems to me the issue is whether or not the sale was with a particular purpose to evade. If it wasn't, there's no withdrawal liability. If it was, there is withdrawal liability. But you can get all that in front of the arbitrator based upon a determination, even though it was an erroneous determination, and make that claim, if you will, in jurisdiction. The reason that that doesn't work is what's the standard of review that the arbitrator has to the non-determination? What you're asking is that we should go to the arbitrator and in a de novo proceeding, ask the arbitrator to determine when the withdrawal was, who the employer was, who was liable, and the amount of the liability. And that's not the statutory job of the arbitrator. But does the arbitrators do make de novo determinations all the time? Not with, under this statute. You cannot, you can't, and we couldn't find. Is that because the statute says that the arbitrator has to review the determinations? Yes, Your Honor. The arbitrator reviews the determination. If the determination itself. If there's a determination. Then you win. Under your theory, you then win because the determination was wrong, although it might have, in effect, reached the right result. But you should win. Well, of course, one wonders. As they say, from your mouth to God's ears. Going back to an initial question I had about a motion for reconsideration, one would think that when the judge did not refer to the October 2nd, 2006 letter, but on October 5th of 2006, the funds had all the information they need to make the determination. One would think that one would bring that information to the district court, and the district court would call a sidebar, and the district court would say, hey, work this out. Wouldn't you? I do. The information actually was all presented to the district court. The district court ruled the way it ruled. You'd save quite a bit of time for rebuttals. Thank you very much. Thank you. May it please the court, my name is Helene Victoria Hedian. I represent the appellees, the Pension Fund of Freight Drivers and Helpers, Local 557, and its trustees. You had all the information on October 5th. The letter on October 2nd, 2006, says we don't have the information. We can't make this decision. You had it three days later. Yeah, couldn't you have withdrawn the letter and just decided this? I mean, three and a half years have gone by, and we're still wondering what's the status of the March sale. Your Honor, the process was that the fund made its determination of a partial in March, as Your Honor observed. The fund asked for complete information. As you have noted, we didn't get it. But you got it. October 5th, you had it. October 5th, we had this document, the 400-page version of the document that Penske refused to give us for two years, and instead giving us this 17-page version. On October 5th, you had... This is a question. I think I know the answer, but I'm not entirely sure. On October 5th, you had all the information you needed to answer the questions that remained in dispute, right? Your Honor, actually not. You didn't have the schedules? You didn't have the exhibits? We had the full document, which we'd been asking for, but the question... Well, doesn't that answer my question? I don't think so, Your Honor, because what Penske was arguing then is that the fund had some obligation to specifically find that this March transaction had a principal purpose to evade or avoid. Now, the fund, as we've cited the case law in our brief, had no obligation to make that finding. The fund had to make a determination of liability. There was a partial withdrawal because the years 2002, 2003, and 2004 fell more than 70% below the prior contribution base in the five prior years. So the fund's determination in March was there's a partial withdrawal. March of what year? March of 2006. The fund said that for the years 2002, 2003, and 2004, based on our actuary's review of the contributions, there's a partial withdrawal. That is in the statute, Section 1385, one of the sections which is committed to the purview of arbitration for its review. Now, Penske has said here both that there was a second determination in the October 2, 2006 letter and that there was no determination. Of course, that's incorrect. What happened is that the fund, in response to Penske's arguments, agreed with one point, which was that the effective date of the withdrawal for that same three-year period, 2002, 2003, and 2004, would actually be December 31, 2004. Which was big, though. Oh, it is big, Your Honor. Clearly it is. Clearly, because if the effective date were 2002, there'd be absolutely no question Penske's in the control group. Yes. And if the effective date is 2004, then the question... Why didn't you go back to the district judge? Maybe you didn't want to when he ignored the October 2, 2006 letter. Your Honor, we thought the district court got it right on the motion for summary judgment. We thought the district court got it wrong when it denied the motion to dismiss initially. But see, the October 06 letter corrected one element. But you just conceded. You just agreed with me. That's a big, big deal. It's a big issue. I would agree, Your Honor. But it doesn't change the determination of liability. Because we're still talking about the same three years, the same decline, the same control group. Now, according to the law, and including the law of this court in Flying Tiger, once an employer is a MEPA employer who is part of a control group, it does not get out of that control group until it demonstrates by agreement, by convincing the fund, or by arbitration, that it has dissolved the control group relationship in a legitimate transaction without a principal purpose to evade or avoid. If the district judge had considered the October 06 letter, whether you call it an amendment or whatever it was, is it not possible or indeed even... amount of the assessment would be changed? No, Your Honor, it's not. Because we're still talking about the same three years. It's always 02, 03, and 04. Then what difference does the... whether the sale in March was legitimate or illegitimate have? If the sale in March was legitimate, then Penske is out of the control group. But you're arguing you still have a 70% decline for the prior three years, and you get liability that way even though they're out. I thought you were saying that if it was legitimate, there's a different issue because you don't get the purpose to evade upon withdrawal, and there may not be withdrawal liability. Well, Your Honor, if Penske undertook this transaction with a principal purpose to evade or avoid withdrawal liability, which is a factual issue committed to arbitration under the statute, then the transaction is disregarded. It didn't happen. The March 04 sale is ignored, and Penske clearly still is in the group. Forever. Forever. And there could be other ways in which Penske is still in the group besides evade or avoid, such as if it really... But I asked you, is it possible? I mean, if indeed it was, for lack of a more elegant word, legitimate. I'm sorry. It doesn't affect the figures? It doesn't affect the $4 million that Penske had to pay? It doesn't affect the amount of the calculation. That's what I asked you. It does not affect the amount whether the sale was legitimate or illegitimate. That's your position? Correct. The amount is the same. It's just a question of whether Penske owes it or not. And if Penske... Whoa, whoa, whoa. I mean, that's really what I'm asking. I'm sorry, Your Honor. I misunderstood. I don't think they care about the amount. I don't think they care about whether or not they've got to pay it. Well, of course they do. So doesn't that make a big difference? But they've paid it in full. Yes. Is there any way that they can get that money back? Is there any set of facts that could develop that the arbitrator could find that they get the $4 million back? Of course. If they prevail in the arbitration, if we ever get there, they get their $4 million back. And the district court could have made the same determination. The district court could have decided that as well, correct? Three years ago. The district court could have decided, I'm sorry, I don't understand your question. Well, I mean, if you had brought this, if this October 6th letter, I'm beginning to sound like a broken record, was litigated, really litigated in front of the district court, these decisions could have been made three years ago by the district court. Your Honor, the letter was in front of the court, even though the court didn't mention it. That's why we're talking about reconsideration. Well, I believe the court understood that the letter clarified the determination. The court didn't mention the letter, so we don't know what the court understood. Then let's talk about what Penske itself did and said, because Penske here today said it thought there was a second determination in October. If it did, then it could have requested review. It's now three years later saying there should have been another review, but it never asked for it. And moreover, in the filing for arbitration, which it invoked, it said what happened here. It had to invoke. Pardon? It had to invoke it. Of course it did, but then. Don't make it sound like Penske was an ax murderer. Oh, Your Honor, I'm sorry. It had to invoke it. I only say that because Penske filed the arbitration. But you wouldn't consider their papers three days late. That's why they had to invoke it. I'm sorry, Your Honor. Because there is supposed to be one process, one forum, which is arbitration not interrupted by interlocutory lawsuits and interlocutory appeals. I'm saying it may well have been that had this been litigated, fully litigated before the district court, there wouldn't have had to be an arbitration in the first place. Well, but the arbitration is the place it's supposed to be litigated, Your Honor, not the district court. Well, not if there's no problems, not if everybody's happy and goes home. Well, what Penske said in filing the arbitration is that the fund made a determination. Now, later it's argued the fund made no determination, but it said it did in January of 07, and then it said the fund made a change in the determination on review. I think the arbitration filing by Penske is extremely telling. That's what Penske thought then, and Penske thought that it would have the opportunity, as it certainly does in the arbitration, to argue that it got out of the control group. I don't want to mess up everybody's fun here on the merits. Suppose we agree with your position that we don't have jurisdiction and dismiss the appeal. What would happen then? Then we proceed in the arbitration. Okay, and then if we do that, then in the arbitration the arbitrator can find Somebody's going to have to find a set of facts, and can agree with Penske in which event they get their $4 million back. They've paid it all, right? They get it back plus interest. They're protected. There is no irreparable harm to them because they have that avenue under the statute. If we are wrong, they get the money back, and they're fully protected. So the fact of the matter is that you agree that there is a forum where the merits of this whole dispute can be, and you think Congress intended to be, litigated. Exactly, the arbitration forum. So all you want us to do is to let it go to arbitration, and the theory is that there was a determination of liability. And while it may have been wrong, it's never been withdrawn. Well, I agree with almost everything you said, Your Honor. We do believe that it should go to arbitration. That is what the statute clearly compels and this Court's decision in Flying Tiger clearly compels that result. If there's a mistake, and we have conceded there is one mistake, if there were multiple mistakes, those are grist for the mill of arbitration. So we made a determination. We believe that there still is liability, but all those issues have to be decided. You said there was a mistake, but you haven't withdrawn the determination of liability. We haven't for several reasons. One was because the mistake in the date, is it effective 02 or 04, doesn't change the number. It only changes who has to pay, Your Honor. It only changes who has to pay if it turns out that Penske either evaded or avoided or didn't act to evade or avoid. So as we said, we don't know enough. And even by being given the full document, that wasn't the full discovery. That wasn't every fact that might bear on. That's the status of the arbitrations. How long is an arbitration? Three years. How long does this arbitration go on? Your Honor. Does it meet an hour a month? The reported arbitrations that I've read about can last many years. I think the Flying Tiger one was more than 10. But this one was filed in January of 07. Then Penske brought this suit in May of 08. And if Penske really believed that what the fund did was completely improper, one would think it would have acted to attempt to stop the arbitration soon. Have there been hearings? Oh, what's been happening? There's been discovery requests. Both sides filed requests of each other, exchanged discovery. We requested discovery of eight other parties that were involved in the transaction. Penske attempted to prevent us from getting that. Just don't editorialize. Just tell us what happened. Okay. Well, we've asked for discovery, Your Honor. We have some discovery. Penske has given us a great deal. We are reviewing that. We have not had any hearings. There have been 10 briefing memorandums submitted to the arbitrator, however, on legal issues from the beginning of the case, partly including issues Penske has raised in this lawsuit concerning burden of proof, venue, various other issues. So the arbitrator ruled in October of 2007 that the venue of the case would be Maryland where the fund is located, as the fund had argued. And we have not taken any depositions yet, although we may. We anticipate a great deal more discovery from other parties. That's why I think it all could have gone away before the district court. Penske? A long time ago. Penske seems a lot like John Dice. And then it comes back to us. After the arbitration, if we're still around, it comes back to this court, right? Presumably. Well, what should happen under the statutory scheme is that all of these disputes should have been ironed out and should be in arbitration. Eventually, if the arbitration, well, however the arbitration comes out, either side would have the right to request judicial review at that point. But that's the way it's supposed to happen. Who's the arbitrator? Arbitrator Edward O'Connell is his name from Lytton, Pennsylvania. Who picks the arbitrator? Both sides jointly pick from a list that's supplied by the American Arbitration Association. So we each had two strikes on a five-person panel and the person who was left was selected. And you share the expenses? Yes. Equally split. Equally split. So there's a lot more to be done in the case. So we would be a lot further along if we hadn't been interrupted by this case, by the case in the district court, and by this appeal. Now, of course, we did not succeed in persuading Judge Stengel on the motion to dismiss that the case should have been dismissed as we thought it should have very clearly been at that time. Judge Stengel denied our motion. But then when the more complete factual record, which we prepared for the opposition to the summary judgment motion was before him, I think he understood more fully that there had been. The blame, if blame there be, lies on both sides because he had a rather scathing footnote as to what defendants did not submit on time. And, of course, I'm ramming about how they should have come in with their full documentation earlier and maybe we wouldn't be here. But so be it. That's why we get paid the big bucks. Thank you. Our children will hear this when it comes back after the arbitration perhaps. I have no doubt about it. Thank you very much. And their children. Thank you very much for your consideration. If you will, Your Honors. Flying Tiger, the case that Apolise liked to mention, involved a determination by the trustees of who the employer was, what the date of the withdrawal was, and whether or not there was an attempt to evade or avoid. These were all, if you look at the opinion, you'll see that these were actually determinations made by the trustees. And they were all then subject to review by the arbitrator. What we have here is an underlying critical question of who the employer was on the date of withdrawal. There has been no determination. In fact, to the country, even if you look at that October letter, the later October letter, the lawyer, by the way, it's a letter from a lawyer that doesn't copy the trustees. If you look at the CC list, there's no evidence that this was a determination by the trustees. We don't have a blind copy. I don't know, Your Honor. I know that the original determination, the March letter, actually is CC'd to the trustees. There is no determination of who the employer is. But then you say part of the reason is because they cannot assess the transaction at this time without additional information. We can't determine whether the purpose was to evade or avoid. And then we have the two-year in-the-making confidentiality agreements that precluded your getting the fund, the information it said it needed to make the determination that it never made. If you will, Your Honor, this statute is not about we couldn't decide. If the trustees had, based on the information, made a determination of who the employer was and said, by the way, you want to disprove it? Come show us otherwise in an arbitration. But they didn't do that. There is no finding. Given the status of what we have here, that's basically where you've got a determination which is conceivably erroneous. Based upon that determination, you get the statutory trigger to give the arbitrator jurisdiction. Given that, then why shouldn't we do this in exactly the way you just said, that there's a determination that's erroneous, a subsequent evaluation determinant that is erroneous? Make that argument to the arbitrator. Because what we have here is a determination of withdrawal on December the 31st, 2002, that didn't occur. We have a determination that Penske was an employer on December 31st, 2002, but no determination that Penske was an employer on December 31st, 2004. And so what you're saying, if you will, is we should go to the arbitrator and say to the arbitrator, the trustees didn't make a determination as to when the withdrawal occurred that you can review, and they didn't make a determination about who the employer was. And what I say to you is, that's not the arbitrator's job. The law is in the first instance that the trustees make that determination. Not only is that the law in Flying Tiger, but the opinion letter from the Pension Benefit Guarantee Corporation, which interprets the statute, says these are determinations that are charged in the first instance to the trustees. And the critical element, if you will, about this, is that once the trustees determine that Penske is an employer, it is an accurate statement of the law, and that they're liable, that Penske's got to pay, and that Penske has to prove it's not the employer. But there's nothing in the law that says, if the trustees don't decide that Penske's an employer... We're discussing the law that says if they determine it, but they make a determination which is erroneous, even if they concede that it's erroneous, that the burden is still on the employer to proceed to correct that erroneous determination. No, that's not the law. The law is, if they determine that Penske was the employer on December the 31st, 2004, maybe there was a withdrawal, then the employer's got to disprove it, but they didn't make that determination. That's why, because of the determinations of the trustees are critical, and because they're the ones who have to make it first, they didn't make them. And so what you're saying is, well, yeah, we could iron in an arbitration, but it's not what the statute provides. So what you would be saying really is the presumptions about determinations, about trust, wouldn't apply, because they didn't determine there was a withdrawal in December 31st, 2004, and they didn't determine that Penske's liable. The statute isn't designed... Just so you know, that's beneficial to my client, and it's beneficial to us that they've got to prove their case because they made no determination. But we stand before the tribunal in honesty and candor about what the statute says, and the statute says they've got to make the determination. They didn't do it. And what we have really is a statute that says under 4219, as soon as predictable after the withdrawal of an employer, they have to make a determination. Well, maybe there was a withdrawal December 31st, 2004. Let them determine it, and let them determine who the employer was. Once they issue that determination, if we agree with them, we'll go home. If we don't agree with them, we'll ask for a review. Don't say anything rash. I've got a hard time getting my mind around that one. Either you would agree with them, or you would go home. We're entitled to review, and we'll review their determination, and they didn't make this determination. And the law charges them with making the determination. So the notion that we are an employer, unless we can prove otherwise, is only the law if they determine it, and they didn't do that. Thank you very much.